

**SIGNED this 19th day of February, 2021**

_/s/ Nicholas W. Whittenburg_
**Nicholas W. Whittenburg**
**UNITED STATES BANKRUPTCY JUDGE**

_____

# IN THE UNITED STATES BANKRUPTCY COURT FOR
# THE EASTERN DISTRICT OF TENNESSEE
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **Chattanooga Mercantile, LLC** | ) | **No. 1:20-bk-12020-NWW** |
| | ) | **Chapter 11, Subchapter V** |
| **Debtor** | ) | |

## M E M O R A N D U M

This case is before the court on the Motion to Assume Lease or Executory Contract and to Determine Any Lease Arrearage filed by the debtor, Chattanooga Mercantile, LLC, on August 20, 2020. The debtor is a single-member limited liability company, which operates an antique consignment store in East Ridge, Tennessee. Luke Stewart owns the company, and Steve Watts manages its daily operations. In response to the COVID-19 pandemic, the Governor of the State of Tennessee ordered nonessential businesses to close during the first two weeks of April 2020. As a result of

that executive order, the debtor was forced to cease operations temporarily. The debtor failed to pay monthly rent to its landlord, Chun Chen, in April, May, and June 2020. Mr. Chen filed a detainer action in the General Sessions Court for Hamilton County, Tennessee seeking to evict the debtor. The debtor filed this bankruptcy case presumably to stay the eviction proceeding.

Mr. Chen opposes assumption of the lease. He contends that the debtor is not a party to the lease dated June 1, 2018, and therefore, may not assume the lease. The debtor does not dispute that Mr. Chen, Mr. Stewart, and Mr. Watts executed the lease individually on April 13, 2018. The debtor contends that the parties made handwritten changes to the lease contemporaneous with its execution, however. Such changes included an agreement that the debtor would be deemed the lessee upon the formation of the company. Mr. Chen denies that he agreed to that change to the lease.

The issue before the court is whether the debtor is a lessee under the lease such that it may assume the lease pursuant to 11 U.S.C. § 365(a). As discussed below, the court finds that the debtor has failed to establish by clear and convincing evidence that the parties intended the debtor to be the lessee rather than Mr. Stewart and Mr. Watts. Accordingly, the court declines to reform the unambiguous written lease. Because the debtor is not a party to the unexpired lease, the lease is not subject to assumption by the debtor.[1]

---

[1] In its motion, the debtor further contends and Mr. Chen disputes that Mr. Chen waived rent totaling $120,000 accruing for the months of April, May, and June 2020. The debtor maintains that because the rent was waived, there is no default that must be promptly cured as a condition of assumption under 11 U.S.C. § 365(b)(1)(A). Because the court finds that the debtor is not a party to the unexpired lease and may not assume it, the court will not address that issue. In the motion, the debtor also seeks a determination that there is no default and no arrearage owed because the governor's executive orders in response to COVID-19 made complying with the lease impossible for the debtor. At the hearing on the

After considering the evidence presented during the hearing held on February 9, 2021, and the parties' briefs and arguments, the court makes its findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure as made applicable in contested bankruptcy matters by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure.

## I. Statement of Facts

In 2012, Luke Stewart and Steve Watts leased commercial property from Chun Chen for the first time. There was no written lease. The parties contracted orally in their individual capacities. The business relationship was stable, and Mr. Stewart and Mr. Watts leased two additional properties from Mr. Chen in subsequent years. The two subsequent leases were also oral contracts made in the parties' individual capacities.

In early 2018, Mr. Stewart and Mr. Watts began looking for a larger business location to operate an antique mall. Once again, they contracted with Mr. Chen, but for the first time, they executed a written lease. Both parties were represented by counsel, with Mr. Chen's attorney preparing the written lease. The written lease, although dated June 1, 2018, was signed on April 13, 2018. The lease defined Chun Chen as lessor and Luke Stewart and Steve Watts as lessees. Chattanooga Mercantile, LLC, was formed less than a month later, on May 2, 2018, and began operating an antique mall on the leased premises.

At trial, Mr. Stewart and Mr. Watts testified that they discussed with Mr. Chen

---

motion, the debtor abandoned its reliance on impossibility or frustration of commercial purpose. Accordingly, the court will not address that issue either.

several changes before signing the contract, with Mr. Stewart writing the agreed-upon revisions into the contract and each party initialing the changes in-line and at the bottom of each page. The lease was executed by all three parties individually at a local bank and was notarized there by Diana Cardona, an employee of the bank. Mr. Chen left the bank with the signed lease; Mr. Stewart and Mr. Watts did not retain a copy of the lease that day. Mr. Chen's attorney recorded the lease with the Hamilton County Register of Deeds on May 9, 2018. For almost two years, the parties performed their lease obligations without incident.

When the COVID-19 disease spread throughout the United States in early 2020, the Governor of the State of Tennessee issued an executive order requiring all nonessential businesses to close, effective April 1, 2020. The debtor complied with the order. In April, Mr. Stewart and Mr. Watts met with Mr. Chen to discuss paying rent while the business was closed. In their testimony at the hearing, Mr. Stewart and Mr. Watts testified that Mr. Chen agreed to waive rent for April, May, and June 2020. Mr. Stewart stated in his declaration that the parties agreed to a waiver of rent only until June 2020, however. Further, while Mr. Watts testified that the rent for three months was to be free, his declaration states that Mr. Stewart "requested three months for free and if in the future . . . the Debtor could afford to pay [Mr. Chen] back . . . the Debtor would do that." Accordingly, the evidence presented by the debtor is inconsistent and suggests that if Mr. Chen agreed to anything, he merely agreed to defer the rent rather than waive it. Mr. Chen recalled a different interaction, in which April rent would be waived if rent for the months of May and June was timely paid. The debtor reopened in May 2020, but the May rent was not paid to Mr. Chen. After Mr. Chen did not receive May's rent, he

filed a detainer action in state court. Attached to the detainer summons was a copy of the lease. Mr. Stewart and Mr. Watts maintain that was the first time they were provided with a copy of the executed lease. The debtor filed its bankruptcy petition under chapter 11 subchapter V on July 23, 2020.

During the February 9, 2021 hearing the debtor presented evidence that four handwritten changes were omitted from the recorded lease that accompanied the detainer summons, principal among them being that the debtor would become the lessee once it was formed. Mr. Chen denied he agreed to any changes to the recorded lease that were not expressly noted thereon. He certainly denied agreeing to substitute the debtor as the lessee upon its formation and releasing the individual named lessees to the lease.

## II. Legal Analysis

The commencement of a bankruptcy case creates an estate consisting of "all legal or equitable interests *of the debtor* in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (emphasis added). Although the Bankruptcy Code defines whether the debtor's property becomes property of the estate, the nature and extent of a debtor's interest in property are determined by reference to nonbankruptcy law, most often state law. *See Barnhill v. Johnson*, 503 U.S. 393, 398 (1992) (first citing *McKenzie v. Irving Tr. Co.*, 323 U.S. 365, 369–70 (1945); then quoting *Butner v. United States*, 440 U.S. 48, 54 (1979)). Accordingly, the court must look to Tennessee law to determine whether the debtor is a lessee under the lease with a leasehold estate that became property of the bankruptcy estate upon the commencement of this case. Only

an executory contract or unexpired lease "of the debtor" is subject to assumption or rejection by a chapter 11 debtor in possession. 11 U.S.C. §§ 365(a), 1107.

When interpreting a contract under Tennessee law, the court seeks to ascertain the intention of the parties and give effect to those intentions consistent with legal principles. *See, e.g.*, *Christenberry v. Tipton*, 160 S.W.3d 487, 494 (Tenn. 2005). To determine the parties' intent, the court looks at the material contained within the four corners of the document. *See, e.g.*, *Jaffe v. Bolton*, 817 S.W.2d 19, 25 (Tenn. Ct. App. 1991); *Rogers v. First Tenn. Bank Nat'l Ass'n*, 738 S.W.2d 635, 637 (Tenn. Ct. App. 1987). Here, the court looks at the recorded, twenty-page lease agreement, which is the only version submitted by the parties.

Words and phrases in a contract are interpreted by their ordinary, usual, and natural meaning, unless expressly stated otherwise. *See, e.g.*, *Piana v. Old Town of Jackson*, 316 S.W.3d 622, 628 (Tenn. Ct. App. 2009); *see also* Tenn. Code. Ann. § 47-50-112(a) ("All contracts . . . in writing and signed by the party to be bound . . . shall be prima facie evidence that the contract contains the true intention of the parties, and shall be enforced as written . . . ."). If a contract's language is clear and unambiguous, the court must construe the contract as written, favoring neither party. *See Cummings v. Vaughn*, 911 S.W.2d 739, 742 (Tenn. Ct. App. 1995); *Heyer-Jordan & Assocs., Inc. v. Jordan*, 801 S.W.2d 814, 821 (Tenn. Ct. App. 1990). "[T]he literal meaning controls the outcome of the dispute." *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006) (citing *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2002)).

Here, the debtor does not argue that the lease is ambiguous in that it contains provisions that are capable of more than one interpretation or are inconsistent. Instead, the debtor argues that the lease is "ambiguous as to the parties' true intent that the Debtor is the true lessee" because the lease is incomplete and does not contain all handwritten modifications. (Debtor's Brief, Doc. no. 109 at 6). On its face the lease is not ambiguous as to identifying the parties, however. Mr. Chen is clearly identified as the lessor, and Luke Stewart and Steve Watts are unambiguously listed as lessees. All three parties signed individually in those capacities. Neither the parties nor the court may create an ambiguity in a contract when no ambiguity exists. *See Edwards v. Travelers Indem. Co.*, 300 S.W.2d 615, 617–18 (Tenn. 1957). The court may not place a "strained construction . . . on the language used to find ambiguity when none exists." *Empress Health and Beauty Spa, Inc. v. Turner*, 503 S.W.2d 188, 190–91 (Tenn. 1973).

The debtor's counsel announced at a pretrial conference and argued at the evidentiary hearing that the lessor committed fraud when recording the lease by omitting a page of additional handwritten modifications. No document containing those purported modifications was submitted into evidence. The most important of those alleged handwritten modifications was a clause that would have deemed Chattanooga Mercantile, LLC, to be the lessee, instead of Luke Stewart and Steve Watts, upon the formation of the company.

Usually, extraneous evidence like the four alleged handwritten modifications is barred from contradicting a completely integrated written contract. *See GRW Enters., Inc. v. Davis*, 797 S.W.2d 606, 612 (Tenn. Ct. App. 1990). A contract is completely

integrated "when it is intended to be the complete and exclusive statement of the parties' agreement." *Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tenn., Inc.*, 566 S.W.3d 671, 696 (Tenn. 2019) (citations omitted). Once a contract is integrated, the parol evidence rule prohibits a contracting party from introducing any other expressions—written or oral—made prior to or contemporaneously with the contract to alter written contractual terms. *See Farmers & Merchants Bank v. Petty*, 664 S.W.2d 77, 82 (Tenn. Ct. App. 1983). That rule is enforced, "even if that evidence is consistent with the written terms of the contract." *Individual Healthcare Specialists, Inc.*, 566 S.W.3d at 696 (citations omitted). That the lease was intended to be fully integrated is made clear because it includes an integration clause that expressly states that it "constitutes the entire agreement between the parties pertaining to the subject matter contained in it and supersedes all prior and contemporaneous agreements, representations and understandings of the parties."

Exceptions to the parol evidence rule exist, however, and the rule has been relaxed for several reasons, including thwarting fraud. *See, e.g.*, *Stamp v. Honest Abe Log Homes, Inc.*, 804 S.W.2d 455, 457 (Tenn. Ct. App. 1990). The courts in Tennessee recognize that the parol evidence rule does not preclude the consideration of extraneous evidence by a party seeking to reform the agreement. *See Smith v. Hi-Speed, Inc.*, 536 S.W.3d 458, 470 (Tenn. Ct. App. 2016). The debtor asserts that the lessor committed fraud by removing a page that contained the four handwritten changes, and the debtor seeks to reform the lease to include alterations purportedly made contemporaneously with the execution of the lease. Accordingly, the court, over the objection of

Mr. Chen, admitted evidence proffered by the debtor regarding those changes. The court next turns to determine whether the debtor's proof warrants reformation of the written lease.

> A party seeking to reform an agreement must establish that
>
> (1) the parties reached a prior agreement regarding some aspect of the bargain; (2) they intended the prior agreement to be included in the written contract; (3) the written contract materially differs from the prior agreement; and (4) the variation between the prior agreement and the written contract is not the result of gross negligence on the part of the party seeking reformation.

*Sikora v. Vanderploeg*, 212 S.W.3d 277, 287–88 (Tenn. Ct. App. 2006) (footnotes and citations omitted). Because of public policy favoring the enforcement of contracts as written, the party seeking to reform a fully integrated written contract must establish the basis for reformation by clear and convincing evidence. *See, e.g.*, *Elchlepp v. Hatfield*, 294 S.W.3d 146, 150 (Tenn. Ct. App. 2008) (quotations and citations omitted). If the elements for reformation are established by clear and convincing evidence, "any discrepancy between the parties' prior agreement and their written contract is presumed to be the result of a mutual mistake (unless, of course, there is evidence of fraud)." *Sikora*, 212 S.W.3d at 288 (citation omitted). In this case the debtor failed to establish the first element of reformation by clear and convincing evidence.

There was no writing offered during the hearing that included any of the four changes to the lease purportedly agreed to when the lease was executed. The lease does include several handwritten modifications made prior to its execution, and all those changes were initialed by the parties. Those handwritten changes are disbursed throughout the lease and written in sections logically related to the changes. Likely, had

the parties indeed agreed that the debtor was to be the lessee, the parties would have noted such a change either in the first paragraph where the term "lessee" is defined or, perhaps, on the signature page of the lessee. No such handwritten modification is noted.

The debtor presented circumstantial evidence consistent with its theory that Mr. Chen fraudulently omitted a page from the lease that included the four handwritten changes. First, the debtor argued that Mr. Chen removed a page with the four handwritten provisions and replaced it with an unnumbered notary acknowledgment of his signature. There is an unnumbered page between pages 17 and 18 of the lease containing a notarized acknowledgment of Mr. Chen's signature. The notary acknowledgment is not dated April 13, 2018, the date the parties admittedly signed the lease. Rather, it is dated May 9, 2018 (the same day the lease was recorded). Diana Cardona testified that her notary log includes three entries from April 13, 2018, for Luke Stewart, Steve Watts, and Chun Chen signing the lease in question. That evidence suggests that the purported changes were made on the page containing the acknowledgment of Mr. Chen's signature but that Mr. Chen substituted that page with a page containing the subsequently executed acknowledgment that omitted the four handwritten changes. No party disputes that the lease was signed and notarized by Diana Cardona on April 13, 2018. Phillip Lawrence, who drafted the lease, testified that working hurriedly, he failed to include a notary acknowledgment for Mr. Chen's signature when he drafted the lease. He testified that when Mr. Chen returned the signed lease—bearing Diana Cardona's acknowledgments of Mr. Stewart's and Mr. Watts's signatures—to Mr. Lawrence, he noticed the omission. He then drafted the unnumbered acknowledgment

page, had Mr. Chen acknowledge his prior signature before a notary then working in his office, and had that notary acknowledge Mr. Chen's signature. He then inserted the unnumbered page where it logically belonged in the lease between pages 17 and 18 and had it recorded with the register of deeds.

The court finds both Ms. Cardona's and Mr. Lawrence's testimony to be credible. Clearly, Ms. Cardona witnessed the execution of the lease by Mr. Chen on April 13, 2018. That explains why he was included in her notary log. Considering Mr. Lawrence's testimony, however, the court believes probable that she did not actually complete a notary acknowledgment of Mr. Chen's signature because one was not included in the form of the lease presented to her on April 13, 2018. Taken together, the court concludes that the inclusion of the unnumbered page containing the acknowledgment of Mr. Chen's signature was to rectify a drafting omission by Mr. Lawrence rather than to commit fraud.

Second, the debtor noted that the recorded lease failed to include a plat designating the leased premises, which was initialed by Mr. Stewart, Mr. Watts, and Mr. Chen in the same way that each page of the signed lease was initialed. The debtor presumably contends that the failure to include the initialed plat with the recorded lease suggests that Mr. Chen fraudulently omitted another page or pages containing the four additional terms purportedly agreed to prior to execution of the lease. Again, however, Mr. Lawrence's testimony provided a credible and less sinister reason for the omission of the plat. Mr. Lawrence testified that, originally, the plat was included with the lease that he delivered to his client, Mr. Chen. Upon his review of the lease after it was returned fully executed and initialed by the parties, though, he realized that the lease

did not reference the plat as an exhibit. So, Mr. Lawrence chose not to include the plat in the recorded lease.

Next, the debtor pointed to an amended detainer summons, to portions of Mr. Chen's deposition, and the course of dealing between the debtor and Mr. Chen subsequent to the execution of the lease as evidence that Mr. Chen viewed Chattanooga Mercantile, LLC, as the true lessee. The court will address those three facts in turn. First, the detainer summons was amended to expressly name Chattanooga Mercantile, LLC, as a defendant. Mr. Lawrence testified convincingly that he amended the detainer summons to conform with his practice when prosecuting detainer actions of not only naming the lessees under the lease as defendants but also naming any non-party occupants as defendants. Rather than constituting an admission that the debtor was a lessee, naming the debtor as a defendant in the action was simply to afford the debtor due process.

Second, the debtor pointed to Mr. Chen's deposition. During the deposition, there was an exchange during which Mr. Chen appeared to answer affirmatively that the lease was with Chattanooga Mercantile, LLC. Specifically, the exchange went:

> Q     And that's who the lease is with, between you [Chun Chen] --
> A     Yeah.
> Q     -- and Sphere and Chattanooga Mercantile, LLC?
> A     Yes.

The court is unconvinced that single exchange constitutes an admission by Mr. Chen that he agreed that the lessee was the debtor rather than Mr. Stewart and Mr. Watts. In fact, reviewing the ninety-three-page deposition of Mr. Chen shows that he thought exactly the opposite. On at least seven occasions during the deposition, Mr. Chen

stated clearly that he thought Luke Stewart and Steve Watts were the lessees, not Chattanooga Mercantile, LLC.

Third, the debtor points to the course of dealing between it and Mr. Chen as evidence that the parties intended the lessee to be the debtor rather than Mr. Stewart and Mr. Watts. Specifically, the evidence reflects that all rent paid under the lease was with checks drawn on the company's bank account. The checks and receipts were signed by Mr. Stewart or included his name, though. Further, it was customary for Mr. Stewart or Mr. Watts to deliver the rent to Mr. Chen at the store on or before the first of each month. That Mr. Chen accepted payment of rent by a method presumably chosen by Mr. Stewart or Mr. Watts is not strong evidence that Mr. Chen agreed when the lease was executed that the debtor was to be the lessee rather than the individual lessees named in the lease.

Considering the evidence presented as a whole, the court does not find it highly probable that the parties to the lease agreed that, following its formation, Chattanooga Mercantile, LLC, would be the lessee under the lease rather than Mr. Stewart and Mr. Watts. The court does not doubt that Mr. Stewart and Mr. Watts genuinely believe the debtor to be the lessee. The debtor simply failed to establish by clear and convincing evidence the first element necessary to reform the lease as written—that each of the parties, including Mr. Chen, agreed that the debtor, not Mr. Stewart and Mr. Watts, would be the lessee. Accordingly, the court declines to reform the lease to name the debtor as the lessee. Because the lease at issue is not with the debtor, assumption of the lease under 11 U.S.C. § 365(a) is unavailable to the debtor.

### III. Conclusion

For the foregoing reasons, the court by separate order denies the debtor's Motion to Assume Lease or Executory Contract and to Determine Any Lease Arrearage.

# # #